**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.   CASE NO:   3:12-cr-19(S2)-J-25MCR

RUEL BROWN
_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

**COMES NOW** the Defendant, RUEL BROWN, by and through undersigned counsel and files this, his Sentencing Memorandum, in which the Defendant includes his objections to the presentence investigation report [PSR] and requests this Court to impose a reasonable sentence. In support of that request, the Defendant states as follows:

**INTRODUCTION:**

The Defendant is scheduled for sentencing before this Court on June 11, 2013 at 10:00 a.m. This Memorandum is intended to analyze the application of the United States Sentencing Guidelines and correct errors contained in the PSR, as well as to outline those factors that the Defendant believes this Honorable Court should consider, in fashioning an appropriate sentence.

The Court is familiar with the holding in *United States vs. Booker* and the factors set forth in 18 U.S.C §3553(a). This Memorandum will therefore concentrate on only those individualized sentencing considerations that should be applied to the unique facts of this case.

**OFFENSE CONDUCT:**

For the purposes of sentencing, Mr. Brown objects to the contents of paragraphs 35 through 78, inclusive, to the extent that they are inconsistent with the Factual Basis contained in the Plea Agreement.  *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *United States v. Booker,* 543 U.S. 220 (2005).

**GUIDELINES CALCULATIONS:**

**Grouping:**

Mr. Brown asserts that the PSR contains an incorrect and impermissibly high grouping adjustment to his Offense Level.  This error is first found in ¶¶ 84 and 85, and continues in ¶¶ 107 through 114.  The grouping in the PSR is based upon the finding that Mr. Brown committed multiple "offenses" against minors, triggering the application of §2G1.1(d)(1) and §2G1.3(d)(1).  The PSR seeks to apply §2G1.1(d)(1), to create additional "offenses"[1] and then group them for the purpose of enhancing Mr. Brown's final Adjusted Offense level.  This improper application of the Guidelines defines "offense" in an impermissibly overbroad manner.

§2G1.1(d)(1) provides if the "*offense* involved more than one victim, Chapter Three, Part D (Multiple Counts) shall be applied as if the persuasion, enticement, coercion, travel, or transportation to engage in a commercial sex act or prohibited sexual conduct of each victim had been contained in a separate count of conviction." U.S.S.G. §2G1.1(d)(1) (emphasis supplied).  The wording of §2G1.3(d)(1) is identical, except that it applies to minors.

The language of the Sentencing Guidelines is to be given its plain and ordinary meaning. *United States v. Pompey*, 17 F.3d 351 (11CCA 1994); *United States v.*

---

[1]   Labeled "pseudo offenses" in several appellate decisions.

*Wilson*, 993 F.2d 214 (11CCA, 1993); *United States v. Strachan*, 968 F.2d 1161 (11th Cir. 1992).    The plain meaning of several Guidelines provisions and the accompanying commentaries clarify the appropriate way to "group" the Defendant's offense.

First, the commentary to U.S.S.G. § 1B1.1 defines "Offense" as "the offense of conviction and all *relevant conduct* under § 1B1.3." *at* ¶ 1(H) (emphasis supplied).

Next, §1B1.3 defines "relevant conduct" as:

(1) Acts or omissions … "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility" for the conviction offense, U.S.S.G. § 1B1.3(a)(1)(A); or

(2) ***Solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts***, all acts or omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction" for those offenses that require grouping of multiple counts pursuant to, U.S.S.G. § 1B1.3(a)(2) (emphasis supplied).

Finally, Application Note 5 for §2G1.1(d)(1)[2] and Application Note 6 for §2G1.3(d)(1)[3] specifically prohibit the application of §3D1.2 to commercial sex offenses.

---

[2]    5. Special Instruction at Subsection (d)(1). For the purposes of Chapter Three, Part D (Multiple Counts), each person transported, persuaded, induced, enticed, or coerced to engage in, or travel to engage in, a commercial sex act or prohibited sexual conduct is to be treated as a separate victim. Consequently, multiple counts involving more than one victim *are not* to be grouped together under § 3D1.2 (Groups of Closely Related Counts). In addition, subsection (d)(1) directs that if the relevant conduct of an offense of conviction includes the promoting of a commercial sex act or prohibited sexual conduct in respect to more than one victim, whether specifically cited in the count of conviction, each such victim shall be treated as if contained in a separate count of conviction. (emphasis supplied)

[3]    6. Application of Subsection (d)(1). For the purposes of Chapter Three, Part D (Multiple Counts), each minor transported, persuaded, induced, enticed, or coerced to engage in, or travel to engage in, a commercial sex act or prohibited sexual conduct is to be treated as a separate minor. Consequently, multiple counts involving more than one minor *are not* to be grouped together under § 3D1.2 (Groups of Closely Related Counts). In addition, subsection (d)(1) directs that if the relevant conduct of an offense of conviction includes travel or transportation to engage in a commercial sex act or prohibited sexual

Simply put, the PSR seeks to group acts or omissions that were not elements of Mr. Brown's offense of conviction, because they are considered to be part of the same course of conduct or common scheme or plan as the offense of conviction.  However, as outline above, this grouping is improper because such conduct is only "relevant conduct" within the meaning of the Sentencing Guidelines if it is ***of a character for which §3D1.2(d) would require grouping of multiple counts***.  Since application of §3D1.2(d) is specifically prohibited by §2G1.1(d)(1) or §2G1.3(d)(1), that definition of "relevant conduct"   ***cannot be applied to expand or create groupings made pursuant to §2G1.1(d)(1) or §2G1.3(d)(1).***

Mr. Brown's offense of conviction is a single count of commercial sex trafficking involving an adult, involving violence, in violation of 18 USC 1591(a) and (b)(1).  His relevant conduct is limited to acts or omissions committed by the defendant "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility" for the offense § 1B1.3(a)(1)(A).

Any activity involving any other victims, other that A.T. and B.L.[4], is simply not relevant conduct for which grouping is allowed.  *United States v. Weiner*, 2013 U.S. App. LEXIS 6327, 13-14 (6th Cir. Ohio 2013) [finding that such a grouping would be "procedurally unreasonable"];  *United States v. Wernick*, 691 F.3d 108 (2d Cir. N.Y. 2012) [sex offenses involving other minors were not committed "during the commission

---

conduct in respect to more than one minor, whether specifically cited in the count of conviction, each such minor shall be treated as if contained in a separate count of conviction.  (emphasis supplied)

[4]     Mr. Brown concedes that the Factual Basis in the Plea Agreement contains sufficient information about B.L. for the Court to determine that offenses related to her occurred "during the commission of the offense of conviction."

of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility" and therefore grouping was improper].

**Enhancements:**

As argued above, the enhancements applied in ¶¶ 93-95 and ¶¶ 98-100 should be stricken because they relate to impermissibly grouped "pseudo offenses". However, the arguments made below regarding ¶¶ 103-105 would apply equally to those paragraphs.

Mr. Brown objects to the specific Guidelines enhancements found in the following paragraphs, related to the "B.L. Group":

- ❖ §2G1.3(b)(2)(B)    Undue Influence of a Minor    +2    ¶ 103.
- ❖ 2G1.3(b)(3)(B)     Use of a Computer             +2    ¶ 104.
- ❖ §2G1.3(b)(4)(A)    Commission of a Sex Act       +2    ¶ 105.

These enhancements are misapplied, for the following reasons:

- ❖ §2G1.3(b)(2)(B) provides:

> If … a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct, increase by 2 levels.

Application Note 3 explains that the Section creates a rebuttable presumption of undue influence where, as here, there is a greater than 10 year age difference, but limits the enhancement to circumstances where, "a participant's influence over the minor compromised the voluntariness of the minor's behavior." The Note further requires that, "In determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case…"

The Factual Basis contains no agreements by the Defendant, nor any language from which the Court can infer, that Mr. Brown ever "unduly influenced" B.L. to commit

prostitution, or "compromised the voluntariness of the minor's behavior". In fact, the government agrees that "some" the women who worked for him "…had either already engaged in prostitution before meeting Brown or had worked in adult entertainment establishments before meeting him", and that the minors misrepresented themselves as adults to Mr. Brown [5]

There is no guidance from the Eleventh Circuit, regarding the proper application of the §2G1.3(b)(2)(B) enhancement in this factual circumstance. However, in *United States v. Vance*, 494 F.3d 985 (11CCA, 2007), the Circuit Court held that the trial court should focus on the intent of the Defendant when applying the enhancement.

In the instant case, the Factual Basis supports only a finding that Mr. Brown was engaged in recruiting women who were already sex workers or adult entertainers to work for him, and that an unspecified subset of these women were minors who apparently misled him into believing they were adults. Where a minor "…had already possessed some inclination to leave home before she even encountered [the Defendant] and had contemplated running away…" the trial court did not commit error in refusing to apply the enhancement pursuant to 2G1.3(b)(2)(B). *United States v. Meyers*, 481 F.3d 1107 (8CCA, 2007). Applying the §2G1.3(b)(2)(B) enhancements to Mr. Brown would therefore be improper.

- ❖ §2G1.3(b)(3)(B) provides:

    > If the offense involved the use of a computer or an interactive computer service to … entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor, increase by 2 levels.

---

[5] Factual Basis, page 1. In fact, the only minor victim about whom there is information in the Factual Basis, B.L., had been arrested and prosecuted for prostitution-related offenses as an adult in Orlando, using a false identity.

Application Note 4 states that "Subsection (b)(3) is intended to apply only to the use of a computer or an interactive computer service to communicate directly with a minor or ***with a person who exercises custody, care, or supervisory control of the minor***."(emphasis supplied)

In this case, the only alleged use of any computer or internet services was for the purpose of advertising to potential customers.  There are absolutely no allegations that Mr. Brown used any computer or computer service in the manner contemplated by §2G1.3(b)(3)(B).

It is error to apply the enhancement where the only alleged use of the computer was to advertise prostitution involving minors on Craig's List. *United States v. Madkins*, 390 Fed. Appx. 849 (11CCA, 2010).  Applying the §2G1.3(b)(3)(B) enhancements to Mr. Brown would therefore also be improper.

- ❖ §2G1.3(b)(4) provides:

    > If (A) the offense involved the commission of a sex act or sexual contact; or (B) subsection (a)(3) or (a)(4) applies and the offense involved a commercial sex act, increase by 2 levels.

The PSR applies a two-level enhancement pursuant to §2G1.3(b)(4)(A), because there was sexual activity.

USSG, §2G1.3 applies to several classes of sexual offenses, which can be broadly defined as (1) commercial sex cases, and (2) cases involving individuals traveling in interstate commerce to engage or attempt to engage in sexual activity with minors.

§2G1.3(a)(1) applies to one, and only one offense, a violation of 18 USC 1591(b)(1), Mr. Brown's offense of conviction.   §2G1.3(a)(1) imposes a base offense level for 1591(b)(1), that is a full four (4) levels higher than any other commercial sex offense

involving minors and six (6) levels higher than offenses involving transportation of minors for sex. It is clearly intended to fully account for a defendant's conduct. As such, the application of §2G1.3(b)(4)(A) to his case would constitute impermissible double counting. Impermissible double counting occurs when one part of the U.S. Sentencing Guidelines Manual is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines. *Kahn v. Olshan*, 371 F.3d 1296 (11CCA, 2004).

Double counting is distinguished from the application of an enhancement for conduct constituting an element of the crime. However, in 18 USC 1591 cases, the doctrines often overlap. *United States v. Coates*, 462 Fed. Appx. 199, (3CCA, 2012).

If 18 USC 1591(b)(1) has, as a necessary element, proof or admission of sex act, then the two-level enhancement pursuant to §2G1.3(b)(4)(A) would be impermissible both because it seeks to enhance the sentence based upon an element of the offense of conviction, and because, by operation of §2G1.3(a)(1), it seeks to enhance the sentence, on account of a kind of harm that has already been fully accounted for by the applicable Base Offense Guideline.

18 USC 1591(a) and (b)(1) provides, in pertinent part:

> § 1591. Sex trafficking of children or by force, fraud, or coercion
>
> (a) Whoever knowingly—
>   (1) in or affecting interstate or foreign commerce, …
>   (2) … knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such ***means will be used to cause the person to engage in a commercial sex act***,…shall be punished as provided in subsection (b). (emphasis supplied)
>
> (b) The punishment for an offense under subsection (a) is—

> (1) if the offense was effected by means of force, threats of force, fraud, or coercion…by a fine under this title and imprisonment for any term of years not less than 15 or for life;

Does 18 USC 1591 require, as a material element, proof that a sex act occurred?  While it appears that it does, there is no clear answer.  Appellate courts have exhaustively defined the interstate nexus element, as well as "reckless disregard" and "coercion", but, as best I can determine, there is no opinion which definitively establishes whether a commercial sex act is required for conviction.  Those few courts that have made reference to the "commercial sex act" language have done so only in *obiter dicta*, although, to the extent that it is discussed, those courts have inferred or assumed that the sexual activity is a necessary element.

*United States v. Tutstone*, 2013 U.S. App. LEXIS 9116; 2013 FED App. 0437N (6CCA, 2013)[6], *at* §IIIB ["In finding the Defendant guilty of 18 USC 1591(a)(2), one of the elements the jury had to find to convict on this offense is that Tutstone knew or recklessly disregarded the fact that S.J. "will be caused to engage in a commercial sex act."]

*United States v. Coates*, 462 Fed. Appx. 199, (3CCA, 2012), *at* 205 ["Moreover, because *§ 2G2.1* also applies to offenses that do *not* require conduct underlying the contested enhancements, **see, e.g., 18 U.S.C. § 1591(a)**, the sentencing enhancements do not double count conduct which the base offense level has already taken into account."] (emphasis supplied)

---

[6]  **NOTICE:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. *SIXTH CIRCUIT RULE 28* LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE *RULE 28* BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

*United States v. Myers*, 430 Fed. Appx. 812 (11CCA, 2011) *at* 816 ["To obtain a conviction under *§ 1591(a)(1)*, the government must show that: (1) a defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person; (2) the defendant knew, or was in reckless disregard of the fact, that the person was under the age of 18 and **would be caused to engage in a commercial sex act**; and (3) the offense was in or affected interstate or foreign commerce. *18 U.S.C. § 1591(a)(1).*"] (emphasis supplied)

Jury Instruction 63 of the Eleventh Circuit Pattern Jury Instructions for Criminal Cases also clearly implies that a commercial sex act is required. The instruction defines "commercial sex act" as "…any sex act, on account of which anything of value is given to or received by any person." Certainly, a jury would not need to be provided a specific definition of "commercial sex act" if it were not required to determine if such an act occurred.

> The Instruction also provides juries with this description of the offense:
>
> > It's a Federal crime for anyone, in or affecting commerce, to [recruit] [entice] [harbor] [transport] [provide] [obtain] or [maintain] by any means a person, knowing or in reckless disregard of the fact that [means of force, threats of force, fraud, or coercion will be used **to cause the person to engage in a commercial sex act**] [the person has not attained the age of 18 years and **will be caused to engage in a commercial sex act**] (emphasis supplied).

In *United States v. Watkins*, 667 F.3d 254 (2CCA, 2012), the Defendant had been convicted of transporting a minor in interstate commerce for the purpose of sexual activity in violation of 18 USC 2423. The Defendant objected to the application of §2G1.3(b)(4)(A), claiming that it constituted "double counting". The Circuit Court

rejected his claim, finding that, because 18 USC 2423 does not require proof sexual activity, as a necessary element, no "double counting" occurred. The court held:

> Watkins…argues that the *§ 2G1.3(b)(4)(A)* enhancement constitutes "[i]mpermissible double counting" because it "punishe[s] defendant for the same conduct which made up defendant's offense under *18 U.S.C. § 2423(a)*."…We disagree.
>
> …Here, there was no impermissible double-counting. The District Court set Watkins' base offense level at 28 because of his violation of *18 U.S.C. § 2423(a)*. …**One may commit this offense without actually having committed a sex act.** Therefore, given that Watkins transported a minor in violation of *18 U.S.C. § 2423(a)*, and the overwhelming and undisputed evidence demonstrates that he committed a sex act with Doe, a minor, the District Court's application of the *§ 2G1.3(b)(4)(A)* enhancement is not error, let alone clear error. The enhancement punishes Watkins for committing a sex act, **which would not otherwise be reflected at a base offense level of 28**. Accordingly, we reject Watkins' challenge to the District Court's application of the *§ 2G1.3(b)(4)(A)* enhancement. (emphasis supplied)

As the Second Circuit recognized, the application of a Base Offense Level of 28 does not necessarily reflect the commission of a sex act. However, Mr. Brown's Base Offense Level is a 34, because of the specific nature of his offense of conviction. The doctrine of *inclusio unis, exclusio alterus* requires this to mean that, where the underlying felony requires the commission of a sex act and the applicable guideline enhances the Defendant's Base Offense Level *because* of the offense of conviction, as does Mr. Brown's, it is error for the Court to apply §2G1.3(b)(4)(A).

This interpretation is supported by the language of §2G1.3(b)(4)(B), which expressly applies the enhancement to only some commercial sex cases, those where a base offense level of 28 or lower is applied pursuant to subsection (a)(3) or (a)(4) of 2G1.3.

§2G1.3(b)(4)(B) would simply not be necessary, if §2G1.3(b)(4)(A) were intended to apply to *all* cases involving sexual activity. Because Mr. Brown's Base Offense Level

was determined to be a Level 34 pursuant to 2G1.3(a)(1), any §2G1.3(b)(4) enhancements to Mr. Brown's guidelines determination would therefore also be improper.

As a result of the foregoing, the Adjusted Offense Level for the "B.L. Group" should be 34.

According to U.S.S.G., §3D1.4, the offense of conviction counts as a Unit, and the "B.L. Group" counts as a second Unit, requiring a two-level increase from the highest Adjusted Offense Level, 34, to a Level 36.

From Level 36, three levels should be subtracted pursuant to 3E1.1(a) and 3E1.1(b), resulting in a Total Offense Level of 33.

**Criminal History:**

Mr. Brown's criminal history has been impermissibly exaggerated by the inclusion of several prior convictions for which he should not have been scored. In order to count as a prior conviction under U.S. Sentencing Guidelines Manual § 4B1.1(a), an earlier offense must have resulted in a sentence of over a year and a day, and it either must have been committed within 15 years of the present offense, or the term of imprisonment must have ended within fifteen years of the present offense. USSG, §4A1.2(e)(1) and (3); *United States v. Montero*, 440 Fed. Appx. 833 (11th Cir. Fla. 2011).

Once again, the PSR seeks to improperly expand the definition of "relevant conduct" beyond what is permitted by §1B1.3. For the same reasons that were discussed above in connection with the improper grouping of "pseudo offenses", this application of

§1B1.3 is incorrect.[7] It is also important to note that the PSR prepared in connection with Mr. Brown's collateral prosecution in the Orlando Division, in 6:12-cr-170-Orl-31GJK, properly applied §1B1.3 and determined Mr. Brown to be a criminal history category III including scoring for this offense. The government did not object to the criminal history category determination in 6:12-cr-170-Orl-31GJK.

Based upon his conviction for the instant offense, which was committed between March 2010 and November 2011, the following prior convictions should not have been scored:

¶ 120 scores Mr. Brown with a "+3" for a 1991 conviction for which he received a suspended sentence. Pursuant to §4A1.2(b)(2), the portion of the sentence that was suspended does not count in determining the length of incarceration. According to the PSR, Mr. Brown's probation for that offense was revoked 10/13/92 and he was paroled 11/10/92, meaning he served 27 days of incarceration, and that offense should have been scored pursuant to 4A1.1(c) for 1 point, if at all, and it should not have counted by operation of §4A1.2(e)(2) and (3). Even if scored pursuant to 4A1.1(a), the sentence was completed more than 15 years prior to the instant offense and it still should not score.

¶ 128 scores Mr. Brown with a "+3" for a 1993 conviction for which he was paroled in February 1995, 15 years and 1 month prior to the instant offense.

In order to count as a prior conviction under U.S. Sentencing Guidelines Manual § 4B1.1(b), an earlier offense must have resulted in a sentence of over sixty (60) days but less than a year and a day, and it must have been imposed within ten years of the

---

[7]   See, *United States v. Ransom*, 2013 U.S. App. LEXIS 7241 (11th Cir. Fla. Apr. 10, 2013)

present offense. USSG, §4A1.2(e)(2) and (3). As a result, the following prior convictions should not have been scored:

¶ 135 scores Mr. Brown with a "+2" for a 1997 conviction for which he served 129 days, completing his sentence more than 12 years prior to the instant offense.

Mr. Brown concedes that, as a result of his conviction in 6:12-cr-170-Orl-31GJK, he will receive an additional "+3" criminal history score, pursuant to USSG, §4A1.2, Application Note 1.

**ADVISORY GUIDELINES SENTENCE:**

The above calculations result in a Total Offense Level of 33, and a criminal history category of IV. The resulting Advisory Guidelines Range is 188-235 months. The government is recommending a sentence at the low end of the range.

**18 USC 3553:**

Mr. Brown has repeatedly and consistently acknowledged the nature and circumstances of his offense, and has expressed his willingness to accept the consequences of his actions. For that reason, he has requested that the undersigned forego a formal analysis of the traditional 18 USC 3553 factors as they might apply to his case. However, in two particular instances, those factors are particularly relevant to the Court's consideration of an appropriate sentence.

Mr. Brown's natural father died when he was four years old. For the next ten years, the entirety of his early childhood and pre-teen years, he lived in an utterly dysfunctional environment. He lived in an almost endless succession of cheap apartments, hotels and battered women's shelters in several states. During this time, he saw his stepfather physically abuse his mother repeatedly, and he witnessed his mother leave, but then

return to his stepfather time and time again. He saw his stepfather act in an inappropriate manner toward his older sister, behavior which he later learned included frequent sexual abuse. This was what he came to know as family life.

Mr. Brown's older sister fled the abuse and began working as a prostitute. She promised to take care of him, so he ran away at age fourteen and joined her. He spent his days hanging out in arcades in Times Square while his sister turned tricks. It wasn't long before she had to rescue him from two sexual predators, who were attempting to entice him away from the arcade where she had left him.

For a short while after that, Mr. Brown returned to his mother, now in South Carolina, and his sister developed a relationship with a pimp in North Carolina. However, it was not very long before Mr. Brown again joined his sister, and for the next five years, he enjoyed a relatively stable life, with a group of prostitutes working mainly around military bases in North Carolina. He eventually began doing the only thing he knew how to do, and continued in "The Life" until the instant arrest.

Since his arrest, Mr. Brown has come to realize the deep damage he has caused to the lives of others. While he is not suggesting that he can ever fully make amends for his life, he has made a commitment to do whatever he can to both bring an end to ongoing human trafficking and to help stop women from becoming involved in prostitution. In that regard, Mr. Brown has begun wide-ranging and ongoing assistance to law enforcement, including:

- ❖ Providing information about how pimps and prostitutes obtain false identification, and from whom.

- ❖ Describing money laundering operations used in the human trafficking industry, and identifying individuals and businesses that help pimps avoid IRS cash transaction reporting requirements.
- ❖ Describing methods and techniques used by pimps to solicit and entice women into prostitution.
- ❖ Describing the underground internet networks used by the sex trade and how on-line advertising for customers works.
- ❖ Explaining how pimps can recruit independent prostitutes on-line.
- ❖ Making training videos for law enforcement officers and vulnerable women, to help identify commercial sex operations and protect women from becoming victims.

In this regard, Mr. Brown is almost unique among pimps. It is virtually unheard of for any pimp to agree to plead guilty to a commercial sex offense, much less cooperate with law enforcement. Mr. Brown's decision to do so confirms his commitment to attempt to put "The Life" behind him, and change his future.

It is anticipated that the government will be filing a Motion for downward departure pursuant to USSG, §5K1.1, recognizing his substantial assistance thus far, and that he may be eligible for additional consideration pursuant to Rule 35 in the future.

**CONCLUSION:**

After a consideration of the foregoing, Mr. Brown would submit that the appropriate sentence to apply in the instant case would be a sentence of between 10 and 15 years, to be run concurrently with the sentence imposed in 6:12-cr-170-Orl-31GJK.

Respectfully submitted this 2nd day of June, 2013.

                    **SMITH & HAINE, P.A.**
                    Attorneys at Law

                    /s/ A. Russell Smith
                    **A. RUSSELL SMITH**, Esquire
                    Florida Bar No.:     296880
                    **ROSS S. HAINE, II**, Esquire
                    Florida Bar No.:     0135781
                    519 Newnan Street
                    Jacksonville, Florida 32202
                    904/355-5633
                    *Attorneys for the Defendant*

**I HEREBY CERTIFY** that a copy of the above and foregoing has been furnished by CM-ECF to Mac Heavener, Assistant United States Attorney, this date.

                    /s/ A. Russell Smith
                    **Attorney**